913 P.2d 366 (1996)
128 Wash.2d 908
The STATE of Washington, Respondent,
v.
Gregory S. OWENS, Petitioner.
No. 63332-1.
Supreme Court of Washington, En Banc.
March 28, 1996.
Nielsen & Acosta, Eric Nielsen, Seattle, for petitioner.
Jim Krider, Snohomish County Prosecutor and David Thiele, Deputy County Prosecutor, Everett, for respondent.
PER CURIAM.
Gregory Owens was convicted of two counts of first degree rape of a child, committed against his stepson, B.K. On appeal, Owens argued that the trial court improperly permitted B.K.'s mother and grandmother to relate hearsay statements B.K. made to *367 them. The Court of Appeals held that B.K.'s statements to his mother were admissible as excited utterances, that his statements to his grandmother were inadmissible, but that admitting the grandmother's testimony was harmless. State v. Owens, 78 Wn.App. 897, 899 P.2d 833 (1995). The court rejected Owens' other assignments of error and affirmed his convictions. Owens petitions for review, contending that the excited utterance exception does not apply even to the statements B.K. made to his mother. We agree. We also hold, however, that any error in admitting this hearsay was harmless in light of B.K.'s own testimony and the State's other evidence of Owens' guilt. We therefore also affirm Owens' convictions.

FACTS
B.K.'s mother, Elizabeth, testified that B.K. had no medical problems before she married Owens. Later, the boy began having nightmares and his health deteriorated. He had unexplained fevers, stomach aches, diarrhea, and nausea. He would not eat, lost weight, and complained that his bottom hurt. Elizabeth took B.K. to several different doctors in 1990 and 1991, and he was hospitalized three times. Numerous tests were conducted, but those doctors were unable to make a diagnosis. Eventually Elizabeth was referred to Dr. Robert Anderson, who first considered the possibility that B.K. had been sexually abused. He raised the issue with Elizabeth, who agreed to bring B.K. in at 9:00 the morning of November 6, 1991 for a rectal examination. Report of Proceedings (RP) at 125. During that examination, Dr. Anderson found swelling, inflammation, and several fissures. He suspected physical trauma, but when he asked B.K. about this the boy responded "oh, no, no, no ... no problems." RP at 272. Dr. Anderson decided that B.K. should be seen by an expert and recommended that Elizabeth take him to Luther Child Center. When informed of Dr. Anderson's suspicions, Elizabeth asked B.K. if he had been abused. He again said no.
Elizabeth and B.K. left the doctor's office at about noon. RP at 134. They went home, where Elizabeth retrieved several items and left a note for Owens. They then went to Camano Island to visit Elizabeth's sister and later to visit a friend who was a counselor. While they were driving from place to place, Elizabeth asked B.K. if he had been molested and listed several people, including Owens, who might have done so. B.K. denied having been abused and replied "no" to every name Elizabeth offered. Eventually, Elizabeth headed toward her parents' home. They arrived there at about 7:00 or 7:30 that evening. RP at 77, 142. In the car on the way, Elizabeth again asked B.K. if he had been molested. This time, he told her "yes" and began to scream. RP at 79-80.[1] The screams were not words, and he did not say who molested him. This conversation occurred more than seven hours after the initial medical examination.
B.K.'s grandmother testified that B.K. was scared, shaking, and crying when he and Elizabeth arrived at her home that evening. Over defense objection, the grandmother also testified that B.K. told her he had been molested, and later said "Greg did this to me, Grandma. Why, Grandma?" RP at 191.
The next day, Elizabeth took B.K. to the Luther Child Center, where he spoke with therapist Lorraine Brutsche. Brutsche testified that B.K. was severely underweight and incredibly anxious. During that first session, B.K. acknowledged that he had been sexually abused, but did not say who had done it. Later, B.K. told Brutsche he "really didn't like it" when Greg raped him. RP at 389.
Dr. James Henderson testified that he examined B.K. on November 13, 1991. During this visit, B.K. said he was living with his grandmother because his stepfather hurt him. When Dr. Henderson asked him how his stepfather had hurt him, B.K. described anal intercourse. Dr. Henderson then conducted a physical examination and discovered scarring in B.K.'s anal opening. Pediatrician Dr. Carol Baer confirmed this finding, and also testified this kind of damage could not *368 have been the result of constipation, diarrhea, or various other causes suggested by counsel.
In his own testimony, B.K. described one incident of molestation and two acts of anal intercourse.
Owens testified that he never raped B.K.

ANALYSIS
Owens does not challenge the admission of B.K.'s statements to Dr. Henderson or to therapist Brutsche. He contends only that B.K.'s first statements, to his mother and his grandmother, should have been excluded as hearsay. The Court of Appeals held that the statements to the grandmother were inadmissible, but the earlier statements to Elizabeth were properly admitted as excited utterances. The court held that B.K.'s visit to Dr. Anderson and the intrusive medical examination to which he was subjected during the visit, combined with the pointed questions from his family immediately thereafter as to whether he had been molested, recreated the original startling event caused by the acts of abuse and constituted the startling event for purposes of ER 803(a)(2). State v. Owens, 78 Wn.App. at 900, 899 P.2d 833. We cannot agree with this reasoning.
An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." ER 803(a)(2). We agree that "a later startling event may trigger associations with an original trauma, recreating the stress earlier produced and causing the person to exclaim spontaneously." State v. Chapin, 118 Wn.2d 681, 686-87, 826 P.2d 194 (1992). We also recognize that an intrusive medical examination could recreate the trauma of a rape. There is simply no evidence that this occurred here, however. According to Dr. Anderson, B.K. appeared "somewhat shy" and "not very animated" after the rectal examination on November 6 and said "oh, no, no, no ... no problems" in response to the doctor's specific inquiry about trauma or abuse. RP at 272. Though no doubt stressful, the examination did not recreate the stress of the sexual abuse sufficiently to cause B.K. to make any spontaneous exclamations. To the contrary, the boy continued for several hours to deny that any abuse had occurred.[2]
The Court of Appeals found an exciting event by combining the examination with family members' subsequent "pointed questions." An excited utterance can be prompted by a question which itself follows an exciting event, such as asking a crime victim what happened. State v. Griffith, 45 Wn.App. 728, 737, 727 P.2d 247 (1986). Nonetheless, the statements must be "provoked by the occurrence itself" rather than by the subsequent questioning. State v. Rivas, 49 Wn.App. 677, 685, 746 P.2d 312 (1987). Asking a victim what happened is different from the extended questioning B.K. faced before he said he had been molested and identified Owens as his assailant.
The reason excited utterances are sufficiently reliable to warrant a hearsay exception is that such utterances are "made while the declarant was still under the influence of the event to the extent that [the] statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment." State v. Strauss, 119 Wn.2d 401, 416, 832 P.2d 78 (1992) (quoting Johnston v. Ohls, 76 Wn.2d 398, 406, 457 P.2d 194 (1969)). "A statement that has been offered in a moment of excitementwithout the opportunity to reflect on the consequences of one's exclamationmay justifiably carry more weight ... than a similar statement offered in the relative calm of the courtroom." White v. Illinois, 502 U.S. 346, 356, 112 S.Ct. 736, 743, 116 L.Ed.2d 848, 859 (1992). By contrast, a declarant who changes a statement after lengthy questioning has necessarily reflected upon the previous responses. Here, the intervening questioning was a significant action intended to affect B.K.'s exercise of judgment and therefore cannot produce an excited utterance.
*369 Although B.K.'s statements to his mother and grandmother were not excited utterances, any error in admitting them was harmless. Since B.K. testified about the rapes at trial, the erroneous admission of his hearsay statements does not violate the Confrontation Clause. State v. Guloy, 104 Wn.2d 412, 424, 705 P.2d 1182 (1985), cert. denied, 475 U.S. 1020, 106 S.Ct. 1208, 89 L.Ed.2d 321 (1986); California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). The error thus requires reversal only if there is a reasonable probability it affected the verdict. State v. McKinsey, 116 Wn.2d 911, 914, 810 P.2d 907 (1991); State v. Cunningham, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980). There is no such probability here. The hearsay at issue consists only of the assertion that Owens molested B.K. Neither B.K.'s mother nor his grandmother testified to any description of the molestation. B.K. described the events in more detail in court and also in the statements testified to by Dr. Henderson and therapist Brutsche. The State also presented extensive medical evidence establishing that B.K. had been subjected to repeated anal penetration. Under these circumstances, admission of B.K.'s statements to his mother and grandmother could not have affected the verdict.

CONCLUSION
We reject the Court of Appeals holding that B.K.'s statements to his mother were excited utterances. We nevertheless affirm Owens' convictions because the error in admitting B.K.'s statements to both his mother and grandmother was harmless.
NOTES
[1] Defense counsel did not object until after Elizabeth gave this testimony and the prosecutor asked her what B.K. screamed. It is thus questionable whether Owens preserved any hearsay objection to B.K.'s statement that he was molested.
[2] It is possible for a statement to be an excited utterance despite the passage of time between the exciting event and the statement. State v. Strauss, 119 Wn.2d 401, 417, 832 P.2d 78 (1992). The problem here is in identifying an exciting event connected to B.K.'s statement.