[No. 36228-3-I.    Division One.    August 26, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v.
RODERICK HAMLET, *Appellant*.

*J. Richard Quirk*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Lee D. Yates, Deputy*, for respondent.

KENNEDY, A.C.J. — Roderick Hamlet appeals his conviction of first degree assault, contending that the trial court erred in allowing the State discovery and use of a defense-retained psychiatric expert as a witness to rebut his diminished capacity defense, and in admitting the expert's testimony that he was originally retained by the defense.[1] Finding no abuse of discretion, we affirm.

## FACTS

In July 1993, Roderick Hamlet was a Seattle police officer who had served on the force for over nineteen years.

---

[1]Hamlet's final assignment of error is treated in the unpublished portion of this opinion.

Before joining the police force, Hamlet served as a United States Marine Corps rifleman in Vietnam. During his tour of duty, Hamlet was wounded three times in combat and was awarded the purple heart. Hamlet has been diagnosed with post-traumatic stress disorder stemming from his service in Vietnam and on the Seattle police force.

On July 8, 1993, Hamlet was at home with his family when a confrontation developed between him and his wife. Ms. Hamlet testified that Hamlet picked up a gun, put it to her head, and cocked it. According to Ms. Hamlet, Hamlet told her: "Today you are going to go to heaven." Ms. Hamlet responded: "God allow it to be so. So be it." Report of Proceedings at 190. Ms. Hamlet walked from the room, and Hamlet followed her outside. As they were leaving the house, Raymond Washington, a family friend, arrived to retrieve a set of keys the Hamlets had been holding for him. Hamlet confronted Washington, pointing a gun at him. Washington testified that Hamlet stated: "I lost everything. I lost it now. I lost everything." Report of Proceedings at 112. Hamlet then ordered Washington to walk away, but as Washington complied, Hamlet appeared to change his mind and ordered him to return. Noticing that Hamlet appeared very tense, Washington turned and began to run away. Hamlet followed Washington, firing his gun at him. Washington sustained several gunshot wounds. Hamlet was arrested at the scene, without incident.

On July 13, 1993, Hamlet was charged with one count of first degree assault for the shooting of Washington. In November 1993, the prosecutor filed an amended information adding a charge of second degree assault of Ms. Hamlet.

Prior to trial, Hamlet notified the State of his intent to rely on a defense of diminished capacity. He disclosed the name of the expert whose testimony he intended to present at trial, but refused to disclose the name of another expert who had examined him and who would not be called at trial. In January 1994, the State moved under

CrR 4.7(g) to compel disclosure of the name, reports, and statements of the non-testifying expert, who had examined Hamlet shortly after his arrest. Following a hearing on February 2, 1994, the trial court granted the State's motion, ordering the defense: (1) to provide the name of the non-testifying expert; (2) to provide all written reports, tests and notes prepared by the expert; and (3) to permit the State to conduct an oral interview with the expert. The court ruled, however, that discovery would not be permitted of written communications between defense counsel and the expert.

Hamlet sought emergency discretionary review of the trial court's ruling the following day. On March 15, 1994, Supreme Court Commissioner Crooks denied Hamlet's motion. Citing *State v. Pawlyk*, 115 Wn.2d 457, 800 P.2d 338 (1990) and *State v. Hutchinson*, 111 Wn.2d 872, 766 P.2d 447 (1989), Commissioner Crooks concluded that Hamlet had failed to demonstrate that the trial court committed obvious or probable error. Hamlet's motion to modify Commissioner Crooks's ruling was denied by five members of the Supreme Court on June 9, 1994. Following the denial of his motion for discretionary review, Hamlet disclosed the identity of the non-testifying expert, Dr. George Christian Harris, to the State.

At trial, Hamlet presented the testimony of Dr. John Liebert in support of his diminished capacity defense. Dr. Liebert testified that Hamlet suffers from a very severe post-traumatic stress disorder resulting from multiple traumas he experienced as a police officer as well as during his service in Vietnam. Dr. Liebert concluded that Hamlet was in at least a partial dissociative state at the time of the shooting, and that his mental capacity to form specific intent was substantially impaired. In rebuttal, the State offered the testimony of Drs. Harris and McFall. Dr. Harris testified that, based on his interview of Hamlet on August 13, 1993, he concluded that Hamlet was not experiencing a dissociative state at the time of the shooting. Similarly, Dr. McFall testified that based on his more

recent interview of Hamlet, he concluded that Hamlet was not experiencing a dissociative state at the time of the shooting.

Over Hamlet's objection, the State was permitted to elicit testimony from Dr. Harris that he had originally been retained by the defense. By agreement of the parties, Hamlet then submitted into evidence a stipulation explaining that the defense chose to call Dr. Liebert rather than Dr. Harris because it learned that Dr. Liebert had experience treating both Vietnam veterans and police officers who suffered from post-traumatic stress disorder.

The jury found Hamlet guilty of first degree assault of Washington, but not guilty of second degree assault of Ms. Hamlet. The trial court imposed a standard range sentence of 93 months. Hamlet appeals.

## DISCUSSION

Hamlet first contends that the trial court erred in compelling discovery of the findings and conclusions of Dr. Harris, and in allowing the State to call Dr. Harris as a witness. He argues that *Pawlyk*, 115 Wn.2d 457, upon which the trial court relied in making its rulings, does not apply when the defendant raises a defense of diminished capacity, as opposed to insanity. The State responds that the trial court's order was proper because the defendant's discovery obligations with respect to experts are the same regardless of whether the defendant relies on a defense of diminished capacity or insanity. We agree with the State.

CrR 4.7 governs discovery in criminal cases. The scope of discovery in a criminal case is within the sound discretion of the trial court, and its decisions will not be overturned absent manifest abuse of that discretion. *State v. Norby*, 122 Wn.2d 258, 268, 858 P.2d 210 (1993); *Pawlyk*, 115 Wn.2d at 470-71. Discretion is abused if it is manifestly unreasonable, or exercised on untenable grounds or for untenable reasons. *State v. Alexander*, 125 Wn.2d 717, 732, 888 P.2d 1169 (1995); *State v. Herzog*, 69 Wn. App.

521, 524-25, 849 P.2d 1235, *review denied*, 122 Wn.2d 1021 (1993).

Hamlet contends that the compelled discovery and permitted use of Dr. Harris as a State's witness violated the attorney-client privilege, his Sixth Amendment right to counsel, and his right to effective assistance of counsel. Our Supreme Court rejected these arguments in *State v. Pawlyk*.

In *Pawlyk*, the defendant was charged with two counts of aggravated first degree murder. He notified the State of his intention to assert an insanity defense, and indicated that Dr. Tanay would be called to testify in support of his defense. Although the defendant had also been examined by Dr. Harris, the defense stated that it would not call Dr. Harris to testify at trial. The State moved to compel discovery of Dr. Harris' reports and conclusions, and maintained that it wished to call Dr. Harris as its expert at trial. The trial court granted the State's discovery requests. *Pawlyk*, 115 Wn.2d at 460-61.

The defendant appealed, arguing, inter alia, that the trial court's order compelling discovery and permitting the State to use Dr. Harris as a witness violated the attorney client privilege, his Sixth Amendment right to counsel, the criminal discovery rules, and the work-product doctrine. *Pawlyk*, 115 Wn.2d at 462. The Supreme Court affirmed the trial court's discovery order, issuing a series of rulings. Noting that the public interest in full disclosure outweighs the attorney-client privilege, the Court held first that the attorney-client privilege does not extend to the testimony of a psychiatrist when the defendant raises insanity as a defense. *Pawlyk*, 115 Wn.2d at 465. Second, the Court held that because evidence pertaining to an insanity defense must be available to both sides at trial, there is no need for the confidentiality that the defendant maintained was required. Thus, the trial court's order compelling discovery and permitting the State to use Dr. Harris as a witness did not violate the defendant's right to counsel. *Pawlyk*, 115 Wn.2d at 468-70. Emphasiz-

ing that the criminal discovery rules are reciprocal in nature and are intended to enhance the search for truth, the Court concluded:

> [R]egardless of whether the defense intends to call a defense-retained psychiatrist as an expert witness, neither this state's criminal discovery rules nor the work product doctrine preclude the State's discovery of that psychiatrist's written reports, or his testimony relating thereto, which are based on the psychiatrist's examination of a defendant who intends to rely upon an insanity defense. We further hold that the State may call that psychiatrist as a witness.
>
> Our conclusion that the rule allows the ordered discovery is consistent with the general principles relating to criminal discovery which we have recounted above. More particularly, it would be manifestly unjust to permit defendant to assert an insanity defense, place his mental state directly in issue, and then allow him protection from discovery of what may be the best evidence, and perhaps the only truly accurate evidence, relating to his mental state.

*Pawlyk*, 115 Wn.2d at 460, 474 (citations omitted).

Although Hamlet recognizes the rulings set forth in *Pawlyk*, he contends that the rulings are limited to cases involving the insanity defense, and do not extend to cases in which the defendant has raised the defense of diminished capacity. We conclude, however, that *Pawlyk* should not be so narrowly construed. In *State v. Hutchinson*, 111 Wn.2d at 880, the Supreme Court explicitly held that CrR 4.7 does not distinguish between insanity as a defense and diminished capacity as a defense, for purposes of discovery. The court based its holding on the fact that "[t]he defenses of insanity and diminished capacity both bring the defendant's mental capacity into question." *Hutchinson*, 111 Wn.2d at 880. Although the two defenses are subject to different requirements of proof, both involve similar fundamental considerations:

> When a defendant raises an insanity defense and introduces supporting psychiatric testimony, a court may order the defendant to submit to an examination by a state psychi-

atrist without violating his privilege against self-incrimination. The same conclusion has been reached in situations in which the defendant has raised a claim of diminished capacity as a defense. Where a defendant raises the issue of insanity and the psychiatrist is called to testify, the defendant will not be allowed to muzzle the psychiatrist at his option. Similar considerations apply where the defendant raises the defense of diminished capacity.

*Hutchinson*, 111 Wn.2d at 880-81 (citations omitted). Thus, although the burden of proving diminished capacity does not shift to the defendant as the burden of proving insanity does, the critical inquiry into the defendant's mental capacity is at issue in both diminished capacity and insanity cases, negating any fundamental differences between the two defenses for purposes of discovery. As in insanity cases, the State in diminished capacity cases has an "exceptional need" for the evidence held by the defense-retained psychiatric expert.[2]

In an attempt to distinguish *Pawlyk* from the present case, Hamlet quotes various portions of the opinion, contending that the language used by the Supreme Court makes clear that the Court intended its rulings to apply only to the insanity defense. The quoted excerpts, however, do not indicate an intention to limit *Pawlyk* exclusively to insanity cases. In fact, in reaching its conclusions, the Court relied on United States Supreme Court cases addressing the broad category of "mental-status defenses." *See Pawlyk*, 115 Wn.2d at 466 (" 'If a defendant requests a psychiatric examination in order to prove a *mental-status defense*, he waives the right to raise a Fifth Amendment challenge to the prosecution's use of evidence obtained through that examination to rebut the defense.' " (quoting *Powell v. Texas*, 492 U.S. 680, 109 S. Ct. 3146, 106 L. Ed. 2d 551, 556 (1989), *cert. denied*, 116 S. Ct. 54 (1995)

---

[2]We reject Hamlet's contention that extending *Pawlyk* to diminished capacity cases will in turn enable the State to compel discovery of defense work product every time a "state of mind" defense is raised. Unlike the defenses of insanity and diminished capacity, the state of mind defenses do not raise the critical issue of the defendant's mental capacity.

(emphasis added)). *See also Pawlyk*, 115 Wn.2d at 468 (citing *Buchanan v. Kentucky*, 483 U.S. 402, 107 S. Ct. 2906, 97 L. Ed. 2d 336, *reh'g denied*, 483 U.S. 1044 (1987), in which the defendant asserted the mental-status defense of extreme emotional disturbance, in support of the holding that compelled disclosure of a non-testifying psychiatric expert did not violate the defendant's right to counsel).

■■ Thus, because *Pawlyk* permits the discovery and use by the State of a defense-retained psychiatrist in cases in which the defendant raises the defense of insanity, and because our Supreme Court has also held that the criminal rules do not distinguish between insanity as a defense and diminished capacity as a defense for purposes of discovery, we hold that the trial court did not abuse its discretion in compelling discovery of Dr. Harris' reports and conclusions, and in permitting the State to call Dr. Harris as its expert witness to rebut Hamlet's defense of diminished capacity.

Hamlet next contends that the trial court erred in admitting Dr. Harris' testimony that he was originally retained by the defense. He argues that the testimony was not relevant, and that the disclosure violated the attorney-client privilege and his Sixth Amendment right to counsel. The State responds that the testimony was properly admitted because it demonstrated lack of bias, and its probative value outweighed any potential for unfair prejudice.

■■ The decision to admit evidence lies within the sound discretion of the trial court, and will not be overturned on appeal absent manifest abuse of discretion. *State v. Markle*, 118 Wn.2d 424, 438, 823 P.2d 1101 (1992). Pursuant to ER 402, "[a]ll relevant evidence is admissible, except as limited by constitutional requirements or as otherwise provided by statute, by these rules, or by other rules or regulations applicable in the courts of this state." ER 402. Evidence is relevant if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401; *see also Channel v. Mills*, 77 Wn. App. 268, 890 P.2d 535 (1995).

Although the Supreme Court in *Pawlyk* did not reach the propriety of admitting testimony as to which party originally retained an expert who testified at trial, the Court noted that the examination of the defendant closest in time to the date of the offense tends to be the most accurate in revealing whether the defendant's mental capacity was affected at the time of the offense. *Pawlyk*, 115 Wn.2d at 462-63. Hamlet recognizes the relevance of evidence regarding which expert was first in time, and in fact agreed below that the jury properly could be informed that Dr. Harris was the first expert to examine him. That the jury may properly be informed as to which expert was first in time does not, however, resolve the issue of whether the jury may also properly be informed as to which party originally retained the expert.

The State points out that juries are routinely informed as to which party originally retained an expert to present testimony at trial because such evidence is relevant to the question of bias and may properly be considered by the jury in determining the weight to be given to a particular expert's opinion. In the present case, although the jury learned that Dr. Harris was originally retained by the defense, the jury also learned that Dr. McFall was retained by the State. The evidence on this issue was thus not one-sided and was available for the jury's evaluation of both experts.

The issue here is one of abuse of discretion. The trial court heard the same arguments that have been presented to us, and we cannot substitute our judgment for that of the trial court absent a conclusion that the trial court's discretion was exercised on untenable grounds or was manifestly unreasonable. Unless we can say that the evidence was so prejudicial as a matter of law that the trial court erred in balancing the probative value against the prejudicial effect, we cannot reverse. We are not willing to go that far. Although some members of this panel likely would have ruled that the jury not be told which side originally retained Dr. Harris out of concern that some

jurors might place undue weight on that factor in evaluating the evidence of diminished capacity, the fact that Dr. Harris was originally retained by the defense was relevant to show an absence of bias on the part of Dr. Harris in favor of the State. The probative value of this evidence versus its potential prejudice is a close question, indeed. Reasonable minds can and have differed on this question, which demonstrates that it is exactly the kind of question best left to the sound discretion of the trial courts. Evidentiary rulings are left to the sound discretion of the trial courts for the very reason that occasions will arise when there is no single right answer to the question of admissibility of challenged evidence. Here, the trial court took steps to mitigate the potential prejudice resulting from the testimony by accepting into evidence a stipulation explaining the decision of the defense to call Dr. Liebert rather than Dr. Harris. The explanation is reasonable on its face, and we cannot say as a matter of law that it did not mitigate the potential prejudice. Accordingly, we hold that the trial court did not abuse its discretion in admitting Dr. Harris' testimony that he was originally retained by the defense.[3]

Affirmed.

The remainder of this opinion has no precedential value

---

[3]Agreement on this issue is not universal. One commentator cautions:

"Although neither the attorney-client privilege nor the work product doctrine should prevent a psychiatrist from testifying under the circumstances described above, a defendant may need protection from legitimate dangers that may exist when a psychiatrist she hired testifies over her objection. For example, undue emphasis may be placed on the fact that the defendant retained but did not call her to testify. A party may decide, after choosing an expert, that expert is not the best qualified person to assist in the preparation of the case. It might be difficult to explain this to case-hardened judges or lay jurors who may be suspicious of psychiatric claims anyway, especially if the decision is based on a personality conflict between the psychiatrist and either the patient or her lawyer. Although it seems relevant that the trier of fact know that the psychiatrist was not paid by the prosecution, it probably is unnecessary to state that a fee was paid by the defendant." Stephen A. Saltzburg, *Privileges and Professionals: Lawyers and Psychiatrists*, 66 Vᴀ. L. Rᴇv. 597, 645-46 (1980). *But see People v. Greene*, 552 N.Y.S.2d 640, 646-47, 153 A.D.2d 439, 449 (holding that the admission of evidence that fingerprint expert called by prosecution was originally retained by the defense did not unduly prejudice the defendant's case in light of other opinion testimony concerning print evidence), *cert. denied*, 498 U.S. 947 (1990).

and will not be published but will be filed for public record in accordance with the rules governing unpublished opinions.

COLEMAN and COX, JJ., concur.

Review granted at 131 Wn.2d 1005 (1997).