IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39146-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JEANIE MARIE LUCY, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Jeanie Lucy appeals her two convictions for assault in the third

degree. We affirm.

## FACTS

Moses Lake Police Officer Chase Pitt approached Jeanie Lucy after responding to

a service call. Ms. Lucy admitted to being intoxicated, and her responses to Officer Pitt's

questions did not make sense. She became agitated and began yelling and flailing her

arms. She continued yelling despite Officer Pitt's attempts to communicate with her.

Officer Pitt told Ms. Lucy if she continued yelling, he would place her under arrest.

Ms. Lucy placed her arms to her sides and slightly behind her, and walked quickly toward

Officer Pitt with her chest pushed forward. Officer Pitt believed Ms. Lucy was going to

assault him, so he put his hand up in a defensive manner, but did not walk toward her.

With her arms still at her sides and slightly behind her, Ms. Lucy came into contact with Officer Pitt's hand, and then pulled her hands up. Officer Pitt then grabbed Ms. Lucy's right arm, placed her on the ground, and put her under arrest.

Officer Yonatan Mengist arrived on scene after Ms. Lucy had been handcuffed and was sitting on the ground. Ms. Lucy thrashed around while Officer Mengist and another officer on scene assisted her to a patrol vehicle. During this process, Ms. Lucy turned toward Officer Mengist, a Black man, and called him the N-word. Then, almost simultaneously, she kicked him in the leg. As she was being placed in the patrol vehicle, Ms. Lucy kicked Officer Mengist again.

Ms. Lucy was charged with one count of assault in the third degree against Officer Mengist, and one count of assault in the third degree against Officer Pitt.

Footage from the officers' body cameras was admitted at trial and showed Ms. Lucy's interaction with Officer Pitt and then with Officer Mengist. The footage did not show Ms. Lucy kick Officer Mengist. Officer Mengist testified at trial. When asked whether it appeared as if Ms. Lucy kicked him intentionally, he stated:

> "I mean it very well could have been her just thrashing so much that she unintentionally did it, but she made a, I mean a racial slur and then—"
> . . . .
> "—just thrashing, so it could have been intentional that she was trying to kick me or maybe get me away from her."

1 Rep. of Proc. (Aug. 17, 2022) at 123.

Officer Pitt testified at trial. He stated, "[Ms. Lucy] began walking toward[ ] me, she appeared to be very upset, so I put my hand in front of her as she came into contact with me." *Id*. at 101.

> Basically, [Ms. Lucy] was walking toward[ ] me, I believe she was going to assault me, so I put my hand up in a defensive manner, I didn't walk toward[ ] her, she came into contact with me, and then she put her hands up and then that's when I took hold of I believe her right arm and began to gently place her on the ground.

*Id*. He testified, "[Ms. Lucy's] body came into contact with me, pushing me backwards." *Id*. at 102. He confirmed the contact was unwanted.

Before trial, Ms. Lucy objected under ER 401, ER 402, ER 403, and ER 404 to the admissibility of the body camera footage where she used the N-word, citing the language as unduly prejudicial and irrelevant. The trial court allowed the evidence, finding it to be probative of animus toward Officer Mengist and assaultive intent. The court provided the jury the following curative instruction at the outset of trial:

> During trial, you may hear recorded audio or witness testimony that [Ms. Lucy] used derogatory or racially offensive language. You may not consider this language for the purpose of concluding that [Ms. Lucy] has a particular character trait or was acting in conformity with any particular character trait.

*Id*. at 94. The body camera footage was played to the jury. In closing argument,

the prosecutor argued:

> Now, what is the evidence? Well, we can see the derogatory language used by [Ms. Lucy] toward[] Officer Mengist. It's the [S]tate's position that this shows intent. It's also the [S]tate's argument that we can infer the actions of [Ms. Lucy] based on the totality of the circumstances here, her demeanor, her language, et cetera.

*Id*. at 168.

The jury found Ms. Lucy guilty on both counts of assault. She now appeals.

## ANALYSIS

*Sufficiency of the evidence*

Ms. Lucy argues there was insufficient evidence to prove she intended to assault Officer Pitt, and thus, the evidence cannot support her conviction of assault against Officer Pitt. We disagree.

Claims of insufficiency of the evidence are reviewed de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). "When reviewing a challenge to the sufficiency of the evidence, we must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Stotts*, 26 Wn. App. 2d 154, 163, 527 P.3d 842 (2023) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). "When the sufficiency of the evidence is challenged in a

criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id.*

To prove its case, the State needed to show Ms. Lucy's assaultive conduct against Officer Pitt was "intentional." *See* Clerk's Papers at 144 (jury instruction defining "assault"). "A person acts with intent or intentionally when [they] act[] with the objective or purpose to accomplish a result which constitutes a crime." RCW 9A.08.010(1)(a). Intent may be "inferred as a logical probability from all the facts and circumstances." *State v. Pedro,* 148 Wn. App. 932, 951, 201 P.3d 398 (2009).

The evidence here amply showed intent. The body camera footage showed that Ms. Lucy essentially charged at Officer Pitt. According to Officer Pitt, he put his hand up in a defensive manner, but he did not move toward Ms. Lucy. The video is consistent with this explanation. Ms. Lucy's actions toward Officer Pitt were indicative of an intentional assault. Sufficient evidence supports her conviction.

*Evidentiary challenges to body camera footage*

Ms. Lucy contends the trial court committed prejudicial error by admitting evidence of the body camera footage where she used a racial epithet directed at Officer

Mengist. She argues the footage containing the slur was irrelevant under ER 401 and

ER 402 and more prejudicial than probative under ER 403. We disagree.

We review the trial court's evidentiary rulings for abuse of discretion and defer

to those rulings unless "'no reasonable person would take the view adopted by the trial

court.'" *State v. Atsbeha*, 142 Wn.2d 904, 913-14, 16 P.3d 626 (2001) (quoting *State v.

Ellis*, 136 Wn.2d 498, 504, 963 P.2d 843 (1998)); *see State v. Hamlet*, 133 Wn.2d 314,

324, 944 P.2d 1026 (1997). "Abuse occurs when the trial court's discretion is 'manifestly

unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *State v.

Sanford*, 128 Wn. App. 280, 284, 115 P.3d 368 (2005) (quoting *State ex rel. Carroll v.

Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

Here, the evidence of the racial slur was relevant. The slur was uttered at the same

time Ms. Lucy kicked Officer Mengist. It was therefore probative of her mental state and

tended to show Ms. Lucy's actions against Officer Mengist were intentional. This meets

the standard for relevance. *See* ER 401.

Evidence of the racial slur was also not unduly prejudicial. The statement was part

of the res gestae of the offense. It was the State's key evidence showing Ms. Lucy's

conduct against Officer Mengist was intentional. The court issued a limiting instruction,

explaining that the jury was not to consider the evidence for improper character purposes.

6

The evidence was properly admitted over Ms. Lucy's ER 403 objection. *See State v. Bedada*, 13 Wn. App. 2d 185, 193-94, 463 P.3d 125 (2020) (identifying the ER 403 balancing test).

## CONCLUSION

The judgment of conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Cooney, J.

7