[No. 58094-4.    En Banc.    March 19, 1992.]

THE STATE OF WASHINGTON, *Petitioner*, v. RICHARD
CHAPIN, *Respondent*.

*Michael J. Sullivan, Prosecuting Attorney,* and *James A. Conley, Deputy,* for petitioner.

*Leslie Stomsvik,* for respondent.

GUY, J. — Richard Chapin was convicted of the second degree rape of a patient in the nursing home where Chapin worked as a nurse's aide. A key part of the evidence upon which the trial court relied in convicting Chapin was the alleged victim's statement, "Raped me", which he uttered to his wife and seemingly in reference to Chapin. Because the alleged victim was incompetent to testify, the trial court admitted the statement under ER 803(a)(2), the excited utterance exception to the hearsay rule. The Court of Appeals reversed, holding that the excited utterance exception was inapplicable, and that without the hearsay statement the evidence was insufficient to support the conviction. We affirm the Court of Appeals.

## FACTS

Richard Chapin began working as a certified nurse's aide at the Ocean View Convalescent Center in Long Beach, Washington, in June 1987. The incidents forming the basis for the present action occurred a week or so later, on June 22 or 23, 1987.

One of Chapin's patients at the Center was Orval Hillison, a 69-year-old man with Alzheimer's disease, who had been residing at the Center since December 1986. Hillison was physically healthy and able to walk without assistance. He was also frequently confused and prone to wandering away. For this reason he was restrained in a geriatric wheelchair for much of the day.

Hillison was cared for by several nurse's aides. One such aide was Jean Jeschke, who testified she first learned of a problem regarding Hillison one afternoon shortly after reporting for her work shift. At that time, Jeschke was informed by the nurse going off duty that Hillison had exhibited some "unusual and belligerent" behavior. Jeschke also stated that normally Chapin tended the male patients and Jeschke tended the female patients. On this particular day, however, Chapin asked Jeschke immediately after they

had reported for work to change patients with him for the day. Jeschke refused to do so.

Later Jeschke visited Hillison in his room, where she found him behaving normally. During the visit, Chapin walked by in the hallway. Jeschke testified that when Hillison saw Chapin, he picked up a water pitcher, threw it at him, shouted obscenities at him, and threatened to kill him. After Chapin left, Jeschke asked Hillison what was the matter, and he replied only that he wanted Chapin kept away from him. Jeschke stated that she had never seen Hillison behave in this way. A short while later, Chapin passed by in the hallway again, eliciting another angry outburst from Hillison. Jeschke calmed Hillison down and started to take him for a walk. They had not gone far when Jeschke noticed that Hillison was walking with a "painful gait". Hillison was in such pain that Jeschke decided not to take him for a walk. She instead returned Hillison to his room where she seated him in his geriatric wheelchair. Chapin entered the room across the hall shortly afterward, and this prompted another angry outburst from Hillison.

Some time later, and after Jeschke had left the room, Hillison's wife, Maeford, arrived to visit him. She decided to take her husband for a walk and called for Chapin to come help him use the bathroom. Maeford testified that when Chapin walked into the room, Hillison immediately started shouting at him and threatening him. Maeford began trying to calm Hillison down and had him sit down on the bed. Hillison started to cry, which, Maeford testified, she had never seen before. Jeschke, responding to the commotion, reentered the room about this time. Maeford tried to explain to her husband that he should be friendly to the attendants because they were there to help him. In response to Maeford's questioning as to why he did not like Chapin, Hillison said, "Raped me".

Maeford and Jeschke further calmed Hillison down, then Jeschke took him into the bathroom to change his pants because he had wet himself. At this time Jeschke made a quick visual inspection of Hillison's rectal area, which she

observed to be "very red and irritated and swollen". This was the only physical examination of any kind that was done on Hillison in connection with the alleged rape.

Chapin was later charged with second degree rape. Because Hillison was incompetent to testify, the trial court ruled that his statement, "Raped me", although hearsay, was admissible as an excited utterance. The jury found Chapin guilty, and he received an exceptional sentence of 36 months' imprisonment.

### ISSUES

This case presents two issues for review. First, was Hillison's statement properly admitted as an excited utterance under ER 803(a)(2)? Second, if Hillison's statement was not admissible, was the remaining evidence sufficient to support the conviction? We answer no to both issues.

### ANALYSIS

### I

■ Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). The hearsay rule excludes hearsay from being admitted as evidence except as specifically provided by the Rules of Evidence, court rules, or statute. ER 802. The theory of the hearsay rule is that cross examination is the best way to reveal whatever untrustworthiness lies beneath the assertions of a witness. 5 J. Wigmore, *Evidence* § 1362, at 3 (1974). The hearsay rule thus represents "a rule rejecting assertions, offered testimonially, which have not been in some way subjected to the test of cross-examination". (Italics omitted.) 5 J. Wigmore, at 3.

A statement's reliability may be established in other ways besides cross examination, however, and recognition of this is expressed in the many exceptions to the hearsay rule. A statement that qualifies for admission under "a 'firmly rooted' hearsay exception is so trustworthy that adversarial testing can be expected to add little to its reliability." *White v. Illinois*, ___ U.S. ___, 116 L. Ed. 2d 848, 112

S. Ct. 736, 743 (1992); *see generally* 5 J. Wigmore, *Evidence* § 1420, at 251 (1974).

The excited utterance exception is stated in ER 803(a)(2), which provides:

> **(a) Specific Exceptions.** The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (2) *Excited Utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

This exception is based on the idea that "under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control". 6 J. Wigmore, *Evidence* § 1747, at 195 (1976). The utterance of a person in such a state is believed to be "a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock", rather than an expression based on reflection or self-interest. 6 J. Wigmore, at 195. The excited utterance exception allows for a statement to be admitted without any showing that the declarant is unavailable as a witness. This is consistent with the requirement of the confrontation clause of the sixth amendment to the United States Constitution. *White v. Illinois*, 112 S. Ct. at 743.

Three closely connected requirements must be satisfied for a hearsay statement to qualify as an excited utterance. First, a startling event or condition must have occurred. Second, the statement must have been made while the declarant was under the stress of excitement caused by the event or condition. Third, the statement must relate to the startling event or condition.

Two principles are relevant regarding the requirement that a startling event or condition must have occurred. First, the startling event or condition that must occur for purposes of the excited utterance exception need not be the "principal act" underlying the case. 6 J. Wigmore, *Evidence* § 1753, at 225-26. For example, a later startling event may trigger associations with an original trauma, recreating the

stress earlier produced and causing the person to exclaim spontaneously. This is vividly illustrated in *United States v. Napier*, 518 F.2d 316 (9th Cir.), *cert. denied*, 423 U.S. 895 (1975). There, the victim of an assault was unexpectedly shown a picture of the alleged assailant in a newspaper 8 weeks after the attack. This caused her to become excited and to exclaim, "He killed me, he killed me". The court held that the statement was admissible as an excited utterance. 518 F.2d at 317-18. The court explicitly stated that the "startling event" was not the assault, but the victim being confronted with the photograph of her assailant. 518 F.2d at 318.

The second important principle regarding the requirement of a startling event or condition is that the startling nature of an event cannot be determined merely by reference to the event itself. Again *Napier* is illustrative. There is nothing inherently startling about being shown a picture in a newspaper. Nonetheless, the assault victim in *Napier* was understandably startled when she was unexpectedly confronted with a photograph of the man who almost beat her to death. What makes an event startling is its effect upon those perceiving it, and an event might be startling to some but not to others. For purposes of the excited utterance exception, therefore, it is the event's effect on the declarant that must be focused upon. *See State v. Carlson*, 311 Or. 201, 216, 808 P.2d 1002 (1991).

The second element of ER 803(a)(2) is that the statement must have been made while the declarant was under the stress of excitement caused by the startling event or condition. This element constitutes the essence of the rule. The first and third elements may be satisfied even where the second is not, for a startling event may have occurred, and the statement may relate to that event, even though the statement was made after the declarant was no longer in a state of nervous excitement caused by the event. On the other hand, if the second element is satisfied, then most likely the first and third elements are as well. For if the second element is satisfied, then the event that caused the

declarant's state of nervous excitement was startling, as the first element requires, and the statement will most likely "relate to" that event, as the third element requires.

■ The key to the second element is spontaneity. Ideally, the utterance should be made contemporaneously with or soon after the startling event giving rise to it. *E.g., State v. Palomo*, 113 Wn.2d 789, 791, 783 P.2d 575 (1989) (statement of victim of attempted rape made immediately after a policeman pulled the defendant off of her), *cert. denied*, 112 L. Ed. 2d 53 (1990); *see generally* E. Cleary, *McCormick on Evidence* § 297, at 706 (2d ed. 1972). This is because as the time between the event and the statement lengthens, the opportunity for reflective thought arises and the danger of fabrication increases. The longer the time interval, the greater the need for proof that the declarant did not actually engage in reflective thought. *See, e.g., State v. Flett*, 40 Wn. App. 277, 699 P.2d 774 (1985) (statement made 7 hours after rape deemed properly admitted upon finding of "continuing stress" between time of rape and statement).

The third element of ER 803(a)(2) is that the utterance "relate to" the startling event. Under the res gestae rule, which is the common law rule from which ER 803(a)(2) was derived, the utterance also had to "explain, elucidate, or in some way characterize [the] event". *Beck v. Dye*, 200 Wash. 1, 9-10, 92 P.2d 1113, 127 A.L.R. 1022 (1939). This elucidation restriction is not a part of ER 803(a)(2). *See* Fed. R. Evid. 803 advisory committee note (contrasting Federal Rules of Evidence 803(1) and 803(2)); 6 J. Wigmore § 1754 (explaining that the elucidation requirement of spontaneous exclamations is a spurious limitation borrowed from the verbal act doctrine). For purposes of ER 803(a)(2), an utterance may "relate to" the startling event even though it does not explain, elucidate, or in any way characterize the event. Any utterance that may reasonably be viewed as having been about, connected with, or elicited by the startling event meets this requirement. ˙

■ Finally, we note that this court examines the trial court's admission of excited utterances for an abuse of dis-

cretion. *State v. John Doe*, 105 Wn.2d 889, 893, 719 P.2d 554 (1986).

## II

Applying the above principles to the present case, we conclude that Hillison's statement does not meet the requirements for being an excited utterance.

The first requirement — a startling event or condition — might be satisfied by either the alleged rape itself or Hillison's seeing Chapin. In either case, the second requirement — that the statement was made while the declarant was in an excited state caused by the startling event — is not met.

The trial court found that the alleged rape occurred "within a day or so" of Hillison's statement. Because of this time lapse, Hillison was unlikely to have still been in an excited state caused by the alleged rape itself when he made the statement. Moreover, earlier in the day, before Hillison made his statement, he had been calm and had engaged in his usual activities. This increases the danger of fabrication. Consequently, the requirement of an excited state caused by the startling event is not met if the alleged rape itself is offered as the startling event.

Alternatively, the startling event that prompted Hillison's statement might be argued to have been his seeing Chapin. The present situation may thus appear like that in *United States v. Napier, supra*, where unexpectedly seeing her assailant's picture in a newspaper startled the victim into spontaneously exclaiming. Here, however, seeing Chapin was a normal part of Hillison's life at the Center, and Hillison had seen Chapin at least three times earlier that day. On each occasion Hillison expressed violent anger. When Chapin again appeared and Hillison made the statement, Hillison's initial response was again one of anger. Anger might accompany the sort of nervous excitement ER 803(a)(2) requires, but anger alone does not ensure reliability; the excited utterance exception should not be confused with some sort of "angry utterance" exception. Moreover,

Hillison's statement was made after Maeford calmed him down and in response to her question as to why he was angry with Chapin. The fact that a statement is made in response to a question will not by itself require the statement be excluded, but it is a factor that raises doubts as to whether the statement was truly a spontaneous and trustworthy response to a startling external event. *State v. Ryan,* 103 Wn.2d 165, 176, 691 P.2d 197 (1984).

■ Other factors raise similar doubts. In particular, Hillison's mental deterioration was severe.[1] He was frequently confused and disoriented. For example, on one occasion prior to his admission to the nursing home, he tried to boil water using only a serving bowl. Upon his admission to the hospital in December 1986, from where he was later discharged to the Center, he could not identify the hospital or city he was in, could not state the date, did not know his wife's name or the names of his children, could not name objects such as a watch, bedspread, or paper, and generally responded incoherently to questions. Most importantly, Hillison's medical records describe him as engaging in "obvious confabulation" in response to questions addressed to him by the examining physician. In addition, the records state that Hillison had developed "paranoid behavior". He thought people were hiding things from him and the family was against him. Because of this paranoid behavior, the family had removed all potential weapons from the home.

The medical records also describe Hillison as being hostile and belligerent. Testimony during trial indicated

---

[1]Much of the information in the record before this court regarding Hillison's mental condition and behavior is drawn from his medical records. Those records had been sent to the prosecutor's office, but despite discovery requests the State did not give them to the defense until the second day of trial, which was too late for the defense to make use of them. The failure to deliver the medical records to the defense appears inadvertent. Failure to have produced this discovery might have been a sufficient basis for reversal, but is not here determined. We rely on the records here for the limited purpose of evaluating the trial judge's pretrial evidentiary ruling regarding the admissibility of Hillison's statement. We recognize that the trial judge made this ruling when he had not had the opportunity to review or hear arguments regarding the medical records.

that Hillison was hostile toward male attendants in particular because they were the ones who sometimes forced him to stop walking and to sit in his wheelchair. On one occasion Hillison struck a male attendant in the stomach hard enough to make him double over with pain. This combative behavior was occurring prior to the incident involving Chapin and prior to the time Chapin began working at the Center.

In sum, Hillison was confused, prone to confabulation, subject to persecutory delusions, hostile to those who tried to direct his behavior, and hostile in particular to male attendants. Hillison made the statement, "Raped me", after calming down from being angry, not from being excited, and in response to a question from his wife. In addition, Hillison's anger was elicited not by any startling event, but by seeing Chapin, which was a normal part of Hillison's life at the Center and which had occurred at least twice previously that day. These factors leave us persuaded that Hillison's statement was not a spontaneous and reliable utterance made while he was under the stress of excitement caused by the occurrence of a startling event. Accordingly, we hold the trial court erred in admitting Hillison's statement under the excited utterance exception of ER 803(a)(2).

## III

We next consider whether, once Hillison's statement is excluded, the State's evidence against Chapin adequately supports the conviction. The Court of Appeals found the remaining evidence insufficient. We agree.

When reviewing the sufficiency of evidence in a criminal prosecution, this court views the evidence in the light most favorable to the prosecution. *State v. Scoby*, 117 Wn.2d 55, 61, 810 P.2d 1358 (1991). The appropriate query is whether, when the evidence is so viewed, any rational trier of fact could have found the elements of the crime established beyond a reasonable doubt. *State v. Baeza*, 100 Wn.2d 487, 488, 670 P.2d 646 (1983) (citing *Jackson v. Virginia*, 443 U.S. 307, 316, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979)).

In the present case, when Hillison's statement is excluded and the remaining evidence against Chapin is construed most favorably to the prosecution, the following factors remain to support the conviction: (1) Chapin asked Jeschke to trade patients with him; (2) Jeschke reported that Hillison's behavior toward Chapin suddenly changed from cooperative to extremely hostile; (3) Hillison's gait indicated he was in pain when walking; (4) Hillison's rectal area was observed to be "very red and irritated and swollen".

This evidence is insufficient to support the conviction. Chapin may have asked Jeschke to trade patients with him for any number of reasons. In light of the numerous statements in Hillison's medical record to the effect that he was hostile to male attendants generally, Jeschke's report of a change in Hillison's behavior is of doubtful accuracy; even if accurate, Hillison's medical records show that such a change would not have been out of character for Hillison. The painful gait and irritated rectal area may have been caused by Hillison's chronic constipation, incontinence, and poor hygiene. There is no medical testimony establishing a rape occurred. In short, the evidence is speculative and does not establish that a rape occurred, or that if there was a rape Chapin was the rapist.

## CONCLUSION

We hold that the trial court erred in admitting Hillison's statement into evidence under the excited utterance exception, and that when the statement is properly excluded, the remaining evidence is insufficient to support Chapin's conviction. Accordingly, we affirm the Court of Appeals and reverse the conviction.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, SMITH, and JOHNSON, JJ., concur.

Reconsideration denied May 8, 1992.