FILED
COURT OF APPEALS
DIVISION II

2015 FEB -3 AM 8: 52

STATE OF WASHINGTON

No. 44722-3-II

DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                                    Respondent,<br><br>        v.<br><br>CARL L. WARNER,<br><br>                                    Appellant. | UNPUBLISHED OPINION |

BJORGEN, A.C.J. — Carl L. Warner appeals from his conviction following a jury trial for felony violation of a domestic violence court order, arguing that the trial court erred in admitting the recording of a 911 call placed by the alleged victim, Jaunette Norvey. Warner also submits a statement of additional grounds for review under RAP 10.10, arguing that he received ineffective assistance of counsel. Finding no error, we affirm.

## FACTS

In August 2012, the Lakewood Municipal Court entered a protection order prohibiting Warner from contacting Norvey for five years. Warner and Norvey had lived together in a romantic relationship for several years and thought of each other as husband and wife.

In November 2012, a hospital admitted Norvey for treatment unrelated to this case. Norvey called 911 from her hospital room early in the afternoon of November 6, and reported that her "husband [had] just beat the shit out of" her. Ex. 2, track 1.

Norvey, apparently agitated, began describing Warner's appearance and direction of travel to the 911 operator. Norvey said that Warner had come to the hospital to visit her, and she told the operator that Warner was probably going to Norvey's house. The operator then asked if Warner had a key to the house, and Norvey said he did.

Moments later, Norvey asserted that Warner did not have a key to her house and informed the 911 operator that she and Warner had a "restraining order." Ex. 2, track 1. The operator asked how long Warner had been at the hospital visiting her, and Norvey replied that he had spent the night there. When the operator asked why Warner had been there in violation of the court order, Norvey replied that "they called him last night because they found me delirious walking down the street." Ex. 2. The operator asked if Norvey had told the hospital staff about the court order, and Norvey replied that she had not because she was delirious at the time. When asked whether she had told staff about the court order after she woke up in the morning, Norvey answered, "I just woke up. I woke up to him choking and beating the hell out of me." Ex. 2, track 1.

The 911 operator then asked to speak to a nurse. Norvey replied that all the nurses were busy and that she could not call one. The operator then placed a call to the hospital and was connected to the charge nurse for Norvey's room. In response to the operator's questions, the nurse reported that Warner had been in the room that day, that Norvey had allowed him to be there, and that to the best of the nurse's knowledge, Norvey had been awake all day.

Lakewood police officer Paul Osness responded to Norvey's hospital room a few minutes later. Osness observed that Norvey seemed upset, was crying, and had "some blood in her mouth around her lips." 2 Verbatim Report of Proceedings (VRP) at 143. Norvey told Osness that Warner had arrived at the hospital the previous night, that the two argued when Norvey awoke, and that Warner then pinned her in a corner of the room, held her neck with one hand, and punched her with the other.

Lakewood police officer Ryan Moody also responded to the call, and located Warner a few blocks away from the hospital. Moody described Warner as "fully cooperative" and "[v]ery

polite." 2 VRP at 162. Moody arrested Warner and gave him the *Miranda*[1] advisements. Warner waived his rights and admitted that he had been at the hospital with Norvey, but claimed that "he thought the [no-contact] order had been dismissed." 2 VRP at 158. Moody turned Warner over to other officers, who transported Warner back to the hospital. Osness questioned Warner at the hospital, and Warner denied assaulting Norvey.

The State charged Warner under RCW 26.50.110(4) with felony violation of a court order (protection/other), based on Warner having assaulted Norvey. The defense moved to exclude the 911 recording before trial, arguing that Norvey's statements were hearsay and were not admissible under the excited utterance exception to the rule against hearsay. After listening to the recording, the court ruled it admissible. The defense also argued that admission of the 911 recording would violate Warner's right to confront the witnesses against him, but conceded that this would not apply if Norvey testified, as she ultimately did.

At trial, Norvey claimed that she had no recollection of the events in the hospital because she was heavily medicated and using heroin at the time. Norvey acknowledged that the caller's voice in the recording sounded like hers, however, and the court admitted the recording.

The trial court conducted a CrR 3.5 hearing and ruled Warner's statements to Moody and Osness admissible. The officers testified to facts as set forth above, and the court admitted a certified copy of the no-contact order. The defense rested without offering any evidence.

The jury returned a guilty verdict and found by special verdict form that Warner and Norvey were members of the same family or household. Warner appeals.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

ANALYSIS

After setting forth the standard of review, we address Warner's contention that the trial court erred in admitting the 911 recording. We then turn to Warner's claim that he received ineffective assistance of counsel.

## I. STANDARD OF REVIEW

We review a trial court's admission of hearsay under the excited utterance exception for abuse of discretion. *State v. Ohlson*, 162 Wn.2d 1, 7-8, 168 P.3d 1273 (2007). We will generally not reverse a trial court's decision to admit evidence under a hearsay exception unless we believe that no reasonable judge would have made the same ruling. *Ohlson*, 162 Wn.2d at 8.

"A trial court abuses its discretion if its decision is manifestly unreasonable or based upon untenable grounds or reasons." *State v. Garcia*, 179 Wn.2d 828, 846, 318 P.3d 266 (2014) (quoting *State v. Lamb*, 175 Wn.2d 121, 127, 285 P.3d 27, *superseded by* 272 P.3d 851 (2012)) (internal quotation marks omitted). A court acts on untenable grounds if the record does not support its factual findings, and it acts for untenable reasons if it applies an incorrect standard or if the facts on which it relied do not satisfy the correct standard. *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995). Finally, a court's exercise of discretion is "manifestly unreasonable" if it is "outside the range of acceptable choices given the facts and the legal standard." *Rundquist*, 79 Wn. App. at 793.

## II. THE EXCITED UTTERANCE EXCEPTION TO THE HEARSAY RULE

Warner contends that the trial court abused its discretion in admitting the recording because "[t]he record here shows that Ms. Norvey consciously and deliberately fabricated a portion of her statement to the 911 operator, for self-serving reasons," specifically Norvey's statements indicating that she did not know that Warner was in her room prior to the assault and

had not allowed him in. Br. of Appellant at 5-11. Because Norvey had time to reflect and fabricate a portion of her story, Warner argues, the excited utterance exception does not apply. We disagree.

The rule against hearsay provides that a person's assertions, other than those made by a witness while testifying in the proceeding at issue, are generally not admissible to prove the truth of the matters asserted. ER 801, 802. However, a hearsay statement is admissible if it qualifies as an "[e]xcited [u]tterance," that is, if it "relat[es] to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." ER 803(a)(2). Statements may be admissible under the excited utterance exception even if the declarant is available to testify. *Ohlson*, 162 Wn.2d at 8.

Our Supreme Court has articulated the rationale for the excited utterance exception to the rule against hearsay as follows:

> This exception is based on the idea that "under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control". 6 J. WIGMORE, EVIDENCE § 1747, at 195 [(Chadbourn rev. ed. 1974)]. The utterance of a person in such a state is believed to be "a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock", rather than an expression based on reflection or self-interest. 6 J. WIGMORE, at 195.

*State v. Chapin*, 118 Wn.2d 681, 686, 826 P.2d 194 (1992). In determining whether the exception applies to a particular statement, then,

> the key determination is whether the statement was made while the declarant was still under the influence of the event to the extent that [the] statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment.

*State v. Brown*, 127 Wn.2d 749, 758-59, 903 P.2d 459 (1995) (internal quotation marks omitted) (alteration in the original).

To have evidence properly admitted under the excited utterance exception, the proponent must meet three interrelated requirements: "that (1) a startling event or condition occurred, (2) the declarant made the statement while under the stress of excitement of the startling event or condition, and (3) the statement related to the startling event or condition." *Ohlson*, 162 Wn.2d at 8. Warner does not argue that the record contains insufficient evidence to support a finding that a startling event had occurred, nor does he contest that Norvey's statements related to that startling event. Warner's challenge instead focuses on the second requirement, which "constitutes the essence of the rule." *Chapin*, 118 Wn.2d at 687.

"The key to the second element is spontaneity[:] . . . as the time between the event and the statement lengthens, the opportunity for reflective thought arises and the danger of fabrication increases." *Chapin*, 118 Wn.2d at 688. Thus, where the evidence establishes that the declarant "had the opportunity to, and did in fact, decide to fabricate a portion of" the proffered out-of-court statement, the trial court necessarily errs in admitting it as an excited utterance. *Brown*, 127 Wn.2d at 759; *State v. Young*, 160 Wn.2d 799, 807, 161 P.3d 967 (2007). That is,

> [b]ecause the excited utterance rule is based on the premise that the speaker has no opportunity to make up a lie before making the utterance, if the speaker in fact did have that opportunity, then by definition the statement cannot be an excited utterance.

*State v. Briscoeray*, 95 Wn. App. 167, 172, 974 P.2d 912 (1999).

That the declarant said something false, omitted unflattering details, or later recanted, however, does not automatically remove a proffered statement from the scope of the excited utterance exception. *See State v. Magers*, 164 Wn.2d 174, 188, 189 P.3d 126 (2008) (plurality opinion) (holding that the trial court did not abuse its discretion in admitting statements as excited utterances even though the declarant initially lied); *Young*, 160 Wn.2d at 808 (rejecting a "bright-line rule that an excited utterance is never admissible once it has been recanted"); *State v.*

6

*Woods*, 143 Wn.2d 561, 600, 23 P.3d 1046 (2001) (holding that the trial court did not abuse its discretion in admitting statements as excited utterances despite apparently self-serving omissions). Under these precedents, whether the trial court abused its discretion in admitting the 911 recording depends on (1) whether the record clearly establishes that Norvey said something false to the operator and, if so, (2) whether the falsehood shows that Norvey consciously fabricated a portion of her statement.

Warner contends that this case is indistinguishable from *Brown*, 127 Wn.2d 749, in which our Supreme Court reversed a rape conviction because the trial court had erroneously admitted the alleged victim's 911 call as an excited utterance. In *Brown*, TG, the alleged victim, told the 911 operator that Brown had abducted her and forced her into his apartment. 127 Wn.2d at 751. She later admitted, however, that she had entered the apartment voluntarily to perform oral sex for money. *Brown*, 127 Wn.2d at 752. TG testified that, after talking the matter over with her boyfriend, she had conceived the abduction story to make her accusation more convincing. Because she had initially agreed to perform oral sex for money, TG feared police would not believe that Brown and his codefendants raped her. *Brown*, 127 Wn.2d at 753. The court concluded that

> T.G.'s testimony that she had the opportunity to, and did in fact, decide to fabricate a portion of her story prior to making the 911 call renders erroneous the trial court's conclusion that the content of her call was admissible as an excited utterance.

*Brown*, 127 Wn.2d at 759.

*Brown* does not resolve the matter, however. In *Young*, our Supreme Court characterized *Brown* as follows:

> *Brown* stands for the proposition that when there is *undisputed evidence* that a declarant fabricated her hearsay statements, the second element of an excited utterance—that the statement was made under the influence of a startling event—is not satisfied.

*Young*, 160 Wn.2d at 807 (emphasis added). In *Young*, the alleged victim later recanted, claiming that she had made up the molestation allegations in order to get Young out of her mother's house. 160 Wn.2d at 804. The *Young* court held that, because the State disputed the veracity of the recantation, the trial court did not abuse its discretion in admitting the original accusation as an excited utterance. *Young*, 160 Wn.2d at 808-09.

Warner points out that Norvey told the operator that she had been asleep all day and woke up to Warner choking and beating her, while the charge nurse stated that Norvey had allowed Warner to be in the room and, as far as she knew, Norvey had been awake that day. From this, Warner argues that "[t]he record here shows that Ms. Norvey consciously and deliberately fabricated a portion of her statement to the 911 operator, for self-serving reasons." Br. of Appellant at 9.

The State counters that here, as in *Young*, no undisputed evidence establishes that Norvey said anything false to the operator, and argues that admission of the recording thus lay in the discretion of the trial court. The State maintains that the charge nurse's statements do not establish that Norvey was untruthful:

> Because Ms. Norvey was delirious at the time she was brought to the hospital, a rational trier of fact could infer that she made statements . . . at that time that she did not recall [when] she called 911 the following afternoon.

Br. of Resp't at 12. We agree with the State.

The charge nurse's statements do not establish that Norvey lied to the operator about having been asleep until the alleged assault. The nurse merely stated that "as far as [she] knew," Norvey had been awake that day. Ex. 2, track 2. As the recording does not make clear what basis the nurse had for her knowledge, it is entirely possible that the nurse believed Norvey was awake when in fact she was not.

As Warner points out, the nurse did say that Norvey had allowed him to be in the room. This did not necessarily contradict Norvey's statements to the operator, however. In response to the operator's question as to why she allowed Warner to visit, Norvey did not deny that she had done so, but explained that she had been delirious when Warner arrived.

The apparent inconsistencies on which Warner relies do not amount to the kind of clear-cut evidence of reflection and fabrication based on which the *Brown* court found an abuse of discretion. *See Brown*, 127 Wn.2d at 752-53, 759. Even were we to accept that Norvey omitted certain important facts for apparently self-serving reasons, it would not establish that the trial court abused its discretion in admitting the recording as an excited utterance. *See Woods*, 143 Wn.2d at 600.

The facts of this case fall much closer to those in *Young* in that we have ambiguous evidence suggesting that the declarant may have fabricated a portion of her statement. *Young*, 160 Wn.2d at 808-09. Such matters fall within the discretion of the trial court: even where we may have reached a different resolution of a factual question, "we will not substitute our judgment for that of the trial court." *Stieneke v. Russi*, 145 Wn. App. 544, 566, 190 P.3d 60 (2008). Warner fails to show that the trial court abused its discretion in admitting the recording as an excited utterance.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Warner argues in his statement of additional grounds (SAG) that his attorney rendered ineffective assistance of counsel. Specifically, Warner contends that defense counsel's performance was deficient because the attorney did not offer (1) two photographs of Norvey apparently taken shortly after the alleged assault, (2) recordings of calls Norvey placed recanting the allegations in the 911 recording, or (3) testimony of two defense investigators who

9

apparently interviewed Norvey. Warner also contends that he received ineffective assistance of counsel because (4) his attorney "was greatly incompetent in his cross of Ms. Norvey, failing to ask any relev[a]nt questions." SAG at 3. The specific example Warner gives only concerns Norvey's use "of heroin and other drugs." SAG at 3. These claims are not properly before us.

A defendant who raises an ineffective assistance claim "bears the burden of showing (1) that his counsel's performance fell below an objective standard of reasonableness and, if so, (2) that counsel's poor work prejudiced him." *State v. A.N.J.*, 168 Wn.2d 91, 109, 225 P.3d 956 (2010). "There is a strong presumption that defense counsel's conduct is not deficient," which presumption is rebutted if "no conceivable legitimate tactic explain[s] counsel's performance." *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). In analyzing ineffective assistance claims on direct appeal, we may not consider matters outside the record. *State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995).

Without knowing the exact contents of the recordings, the photographs, or the testimony of the defense investigators, we cannot evaluate whether they would have helped Warner's case. Defense counsel may well have had legitimate tactical reasons for not offering the evidence to which Warner refers. Thus, it is impossible to ascertain on the record before us whether the failure to offer this evidence fell below an objective standard of reasonableness or prejudiced Warner.

With respect to his allegation that his attorney failed to adequately cross-examine Norvey, Warner's SAG fails to "inform the court of the nature and occurrence of the alleged errors," as RAP 10.10 requires. Regarding the only specific example Warner gives, Norvey's drug use, the record establishes that defense counsel fully explored the issue on cross-examination. Defense counsel also inquired into Norvey's various recantations.

10

The issues raised in Warner's SAG depend on matters outside the record or are not sufficiently articulated to allow for review. We decline to address them further.

CONCLUSION

The trial court did not err in admitting the entire 911 recording. The matters raised in Warner's SAG are not adequately presented for review. We thus affirm the trial court in all respects.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
BJORGEN, A.C.J.

We concur:

_____
MAXA, J.

_____
MELNICK, J.