# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48231-2-II |
| Respondent, | |
| v. | |
| S.B,[1] | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — S.B., a juvenile, appeals from his rape in the second degree conviction. We conclude that the trial court erred in admitting hearsay statements but the error was harmless, and the delayed entry of findings of fact and conclusions of law did not prejudice S.B. As to S.B.'s statement of additional grounds (SAG), sufficient evidence existed to support his conviction and we do not review the credibility of a witness. We affirm.

### FACTS

In April 2015, during spring break, S.B., Jane, Mary, and David[2] met in Mary and David's mother's recreational vehicle (RV) to watch a movie. S.B., 16 years old, was David's friend. Jane and Mary, both 13 years old, were best friends. Jane did not know S.B. and did not talk directly to him.

---

[1] In accord with RAP 3.4, and to protect the confidentiality of the juvenile party, initials will be used in the case caption and throughout the opinion.

[2] We use fictitious names for the juvenile witnesses in this case to protect confidentiality.

That night, Jane and Mary fell asleep in the living room on a futon mattress; S.B. and David slept on the floor beside the mattress. Mary's mother was in her bedroom. Jane or Mary slept next to the wall on the futon. S.B. or David slept next to the futon.

At some point during the night, Jane woke up because she felt someone's "finger graze[ ] over the crack of [her] butt" and "put their finger in [her] butt." Report of Proceedings (RP) (Sept. 17, 2015) at 81-82. Afraid to look at the person, Jane kept her face in her pillow. Approximately one minute later, Jane looked up and saw S.B. moving "back to his original position." RP (Sept. 17, 2015) at 82. She also saw S.B.'s face. No one else was moving. Neither Mary nor David heard, felt, or saw anything.

The next morning, Jane saw S.B. "grinning at [her] like he had accomplished something." RP (Sept. 17, 2015) at 84. They did not speak. After the boys left the RV, Jane told Mary, "[S.B.] touched my butt," however, Mary did not believe her. RP (Sept. 17, 2015) at 85. Jane did not tell Mary about the penetration. She did not mention the incident to anyone else, including her parents.

The following week when school restarted, Jane, Mary, and their friends talked about matters that upset them. Needing to get it off her chest, Jane told them that on spring break, she felt someone touch and penetrate her butt. While recounting the incident, she cried and appeared upset. Although Jane did not see who assaulted her, she was certain S.B. did it.

On the same day, Jane and her friends told the school counselor, Erin Abel, about the sexual assault by S.B. Jane told Abel that she feared telling people about it. Jane was crying, withdrawn, sad, and scared. Abel noticed the change in Jane's demeanor because Jane was usually happy, outgoing, good-natured, and chatty. Abel contacted Jane's mother, Mary's mother, Child Protective Services, the sheriff's office, and S.B.'s school counselor.

2

Detective Jamie Gallagher of the Thurston County Sheriff's Office contacted Jane and Mary at their school. Gallagher spoke with the girls separately. Jane created a drawing of where people slept the night of the incident and told Gallagher that she believed S.B. sexually assaulted her. Jane said that when she turned over on the futon, she saw S.B. moving; David remained asleep and unmoving. Mary told Gallagher that she did not witness the incident. After speaking with the girls, Gallagher contacted S.B. and arrested him.

The State charged S.B. with rape in the second degree, alleging that S.B. had sexual intercourse with Jane when she was "incapable of consent by reason of being physically helpless or mentally incapacitated." Clerk's Papers (CP) at 5, 7. S.B. pleaded not guilty.

I. EXCITED UTTERANCE TESTIMONY & RULINGS

When Abel testified at trial as to what Jane told her at school, S.B. objected on hearsay grounds. The State argued the statement constituted an excited utterance. The court overruled S.B.'s objection. Abel continued and explained that Jane, while crying, told her S.B. "put his finger up her butt hole" and it startled her awake. RP (Sept. 17, 2015) at 31. She looked over and saw S.B. moving.

When Mary testified as to what Jane told her at school, S.B. again objected. The trial court again overruled S.B.'s objection. Mary continued and testified that Jane, while appearing visibly upset, told her and their friends that someone woke her by "sticking their hand down her pants" and "[p]utting their fingers in her butt." RP (Sept. 17, 2015) at 50.

The trial court orally ruled and found S.B. guilty of rape in the second degree. On September 28, a disposition hearing occurred and S.B. received a sentence of 30 to 40 weeks in

custody with the Juvenile Rehabilitation Administration.[3]  At the close of the hearing, the State indicated that it would prepare written findings and submit them to the trial court.

S.B. appealed his conviction.

II.     WRITTEN FINDINGS OF FACT & CONCLUSIONS OF LAW

Approximately eight months after S.B. filed his notice of appeal, the trial court entered written findings of fact and conclusions of law regarding S.B.'s bench trial.[4]  It found Jane to be a credible witness.  The written findings of fact and conclusions of law mirrored the court's oral ruling.

ANALYSIS

I.      HEARSAY

S.B. argues that Jane's hearsay statements were not excited utterances because they were made to Mary and Abel one week after the incident occurred, and Jane had time to reflect on the incident because her statements were more detailed than her initial disclosure to Mary.  The State argues that the rape itself was not necessarily the startling event; rather, the conversation with her friends may be considered the startling occurrence because it recreated the stress and elicited a spontaneous response.  We conclude that the trial court erred in admitting the statements under the excited utterance exception, but the error was harmless.

---

[3] On the same day, the trial court denied S.B.'s motion for a Special Sex Offender Disposition Alternative (SSODA) and entered written findings of fact and conclusions of law regarding the SSODA.  In S.B.'s notice of appeal, he states that he appeals the denial of his motion for a SSODA in addition to his conviction.  Because he does not assign error to it in his briefing or SAG, we do not consider the issue.  RAP 10.3(a)(4).

[4] The written findings of fact and conclusions of law were submitted and entered approximately one month after S.B. filed his brief.  S.B. did not submit a reply brief.  We granted the State's motion to supplement the record with the written findings.

A.    LEGAL STANDARDS

We review the admission of evidence under a hearsay exception for an abuse of discretion. *State v. Woods*, 143 Wn.2d 561, 595, 23 P.3d 1046 (2001).  We will not disturb a trial court's ruling unless we believe that no reasonable judge would have made the same ruling.  *Woods*, 143 Wn.2d at 595-96.  Error in admitting hearsay evidence may be harmless if there is a reasonable probability that the error did not materially affect the verdict.  *State v. Owens*, 128 Wn.2d 908, 914, 913 P.2d 366 (1996).[5]  Further, the error is not prejudicial if similar testimony was admitted without objection.  *State v. Ramirez-Estevez*, 164 Wn. App. 284, 293, 263 P.3d 1257 (2011); *State v. Dixon*, 37 Wn. App. 867, 874-75, 684 P.2d 725 (1984) (erroneous admission of evidence as excited utterance was harmless error because the court heard essentially the same details in the victim's testimony)).

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted.  ER 801(c).  An excited utterance is admissible if it related to "a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."  ER 803(a)(2).  Three closely connected requirements must be satisfied in order for a hearsay statement to qualify as an excited utterance: (1) a startling event or condition occurred, (2) the statement was made while the declarant was under the stress of excitement caused by the startling event or condition, and (3) the statement relates to the startling event.  *State v. Young*, 160 Wn.2d 799, 806, 161 P.3d 967 (2007); *State v. Chapin*, 118 Wn.2d 681, 686, 826 P.2d 194 (1992)).

The statement must be made while the declarant was still under the influence of the event, "to the extent that the statement could not be the result of fabrication, intervening actions, or the

---

[5] Since Jane testified about the rape at trial, erroneous admission of her hearsay statements through Mary and Abel does not violate the Confrontation Clause; therefore, the less stringent harmless error rule applies.  *Owens*, 128 Wn.2d at 914.

exercise of choice or judgment." *Woods*, 143 Wn.2d at 597. While passage of time alone is not dispositive of whether a statement qualifies as an excited utterance, *State v. Strauss*, 119 Wn.2d 401, 416-17, 832 P.2d 78 (1992), "[t]he longer the time interval, the greater the need for proof that the declarant did not actually engage in reflective thought." *Chapin*, 118 Wn.2d at 688.

      B.      THE HEARSAY STATEMENTS WERE INADMISSIBLE AS EXCITED UTTERANCES, BUT THE ERROR WAS HARMLESS

The trial court heard testimony that the day after the incident, Jane disclosed to Mary that "[S.B.] touched [her] butt" at night. RP (Sept. 17, 2015) at 85. She did not mention the penetration and did not mention the incident again until she went back to school. At that time, Jane told Mary and Abel that S.B. penetrated her on the night of the incident.

The sexual assault constituted the startling event. Jane's statements to Mary and Abel both related to the startling event. However, Jane's statements at school were not made while she was under the stress of excitement caused by the startling event. Initially, Jane did not disclose that S.B. penetrated her. One week had passed since the incident, giving Jane ample time to engage in reflective thought. Her statements were not a spontaneous response produced by the shock she was in because of the startling event.

The State's argument that Jane's conversation with her friends was the startling event is unpersuasive. No evidence showed that the conversation at school between Jane, Mary, and her friends was a startling event for which she was under stress. And, even if it were, the statements did not relate to the conversation. They related to the sexual assault. *See* ER 803(a)(3). We, therefore, conclude that the trial court should not have admitted the hearsay statements Jane made to Mary and Abel one week after the incident as an excited utterance exception. However, we also conclude that the error was harmless.

Here, Jane testified at trial regarding the rape and was subject to cross-examination. She testified as to the disclosures she made to Mary and her friends at school, and the disclosures she made to Abel on the same day. Jane also testified that she was scared to tell people what happened. Her testimony was consistent with the hearsay statements introduced through Mary and Abel.

The trial court also found Jane to be a credible witness. Because the trial court heard essentially the same details testified to by Jane that were admitted through Mary's and Abel's testimony, the hearsay statements were not prejudicial to S.B. *See Ramirez-Estevez*, 164 Wn. App. at 293. We conclude that admitting Jane's hearsay statements did not materially affect the verdict and was, therefore, harmless error.

II.     WRITTEN FINDINGS OF FACT & CONCLUSIONS OF LAW

S.B. argues that the trial court failed to enter adequate and timely written findings of fact and conclusions of law on S.B.'s adjudication of guilt, requiring remand or reversal. We disagree.

A.     LEGAL STANDARDS

JuCr 7.11(d) requires that the trial court enter written findings of fact and conclusions of law in a case that is appealed, and requires the State to submit such findings and conclusions within 21 days after receiving the juvenile's notice of appeal. Failure to enter written findings and conclusions following a criminal bench trial requires remand for entry of the same. *State v. Head*, 136 Wn.2d 619, 624, 964 P.2d 1187 (1998).

Untimely written findings and conclusions, however, do not constitute reversible error if the defendant is not prejudiced and the State does not tailor the findings to meet the issues raised in the defendant's appellate brief. *State v. Lopez*, 105 Wn. App. 688, 693, 20 P.3d 978 (2001). While the belated filing of written findings and conclusions is disfavored, *State v. Pray*, 96 Wn.

App. 25, 30, 980 P.2d 240 (1999), we do not infer prejudice from such a delay. *Head*, 136 Wn.2d at 625. The defendant bears the burden of proving actual prejudice. *Head*, 136 Wn.2d at 624-25.

  B. THE TRIAL COURT DELAYED ENTERING WRITTEN FINDINGS, BUT S.B. SUFFERED NO PREJUDICE

  Here, the trial court issued its oral ruling at the conclusion of the trial. The court stated the facts of the case and how its conclusion on S.B.'s guilt related to the facts. It explained its finding that Jane was a credible witness and fully stated why it found S.B. guilty. The written findings and conclusions mirrored the court's oral ruling nearly verbatim. There is nothing to suggest that the written findings and conclusions were tailored to meet the assignments of error and the issues S.B. presents in his appeal. Nor is there anything to suggest that the delay in entering the written findings and conclusions prejudiced S.B. in any way. *See Lopez*, 105 Wn. App. at 693. We, therefore, conclude that the delay in entering written findings and conclusions does not require remand or reversal.

III. STATEMENT OF ADDITIONAL GROUNDS

  In his SAG, S.B. asserts that insufficient evidence existed to convict him and that the victim was not a credible witness because she had four different stories and could not remember the date of the incident. He does not expand on his assertions. We conclude that sufficient evidence supported his conviction. We do not reach the assertion regarding witness credibility.

  A. SUFFICIENCY OF EVIDENCE

  To determine whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the State and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt. *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). "'Substantial evidence' is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise." *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182

(2014). Circumstantial evidence is as reliable as direct evidence. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980)).

In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010). Any inferences "'must be drawn in favor of the State and interpreted most strongly against the defendant.'" *Homan*, 181 Wn.2d at 106 (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). In addition, "we must defer to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence." *Homan*, 181 Wn.2d at 106. Unchallenged findings of fact are verities on appeal. *State v. O'Neil*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

Our review of the record and the findings show that when the evidence and all of its reasonable inferences are viewed in the light most favorable to the State, a rational fact finder could find, beyond a reasonable doubt, that S.B. was guilty. Therefore, we conclude there was sufficient evidence for the trial court to find S.B. guilty of rape in the second degree.

B. CREDIBILITY OF WITNESS

When reviewing the sufficiency of the evidence to support a conviction, we defer to the fact finder on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. *State v. Emery*, 161 Wn. App. 172, 199, 253 P.3d 413 (2011). "'Credibility determinations are for the trier of fact and are not subject to review.'" *State v. Starbuck*, 189 Wn. App. 740, 757, 355 P.3d 1167 (2015) (quoting *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004)), *review denied*, 185 Wn.2d 1008 (2016). Because we do not review a finder of fact's credibility determinations, this issue is without merit and we decline to address it further.

48231-2-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Johanson, J.

Bjorgen, C.J.