IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 77924-9-I |
| | ) | |
| ROTANA EK, | ) | DIVISION ONE |
| | ) | |
| Appellant, | ) | UNPUBLISHED OPINION |
| | ) | |
| and | ) | |
| | ) | |
| LAYHEANG SAN, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | FILED: August 19, 2019 |

HAZELRIGG-HERNANDEZ, J. — Rotana Ek appeals the superior court's denial of his motion to vacate an order invalidating his marriage to Layheang San. Because Ek fails to show that the superior court's decision was an abuse of discretion, we affirm.

## FACTS

Ek and San were married on November 18, 2010 in Cambodia. They separated on March 7, 2015 in Washington. On April 8, 2015, San filed a petition to invalidate the marriage in King County Superior Court.[1] San alleged that at the time of their marriage, Ek was already married to another woman in Cambodia,

---

[1] RCW 26.04.020(1)(a) prohibits marriage when either party has a spouse living at the time of the marriage. Pursuant to RCW 26.09.040(4)(b), a court shall declare a marriage invalid if it finds that a prior undissolved marriage of one of the parties existed at the time of the marriage.

Laline Rim.[2] Ek filed a response to the petition, asserting that Rim died before his marriage to San and thus the marriage was valid. Ek attached an English translation of Rim's death certificate, which states that Rim died on December 21, 2009. According to Ek, Rim died when her motorcycle was hit by a car.

San moved for summary judgment. San supported the motion with her own declaration stating that Ek admitted to her after their marriage that Rim was still alive, and that he only married her for immigration purposes because San was a naturalized United States citizen. San also attached declarations from several individuals stating that they had personally witnessed that Rim was still alive and living with her parents in Cambodia. These individuals included a husband and wife who were neighbors of Ek's family, the chief of Rim's village, and a local police inspector. In addition, San attached a copy of Rim's current government-issued identification card. San also provided a declaration from a provincial chief of police stating that there were no reported traffic fatalities on December 21, 2009 and no records indicating that anyone named Laline Rim had died on that date.

In the meantime, Cambodian prosecutors initiated a criminal proceeding alleging that Ek had fraudulently procured a death certificate for Rim. On October 12, 2016, a Cambodian trial court found Ek guilty as charged. The Cambodian trial court issued a detailed 14-page opinion making findings of fact and specifying the evidence it relied upon, which included the evidence San presented to the superior court. Ek appealed the conviction.

---

[2] The record contains multiple other spellings of Ek's wife's name, including "Lalin Roehm" and "Lalin Roem."

2

The superior court held a summary judgment hearing on January 30, 2017. It issued an order "provisionally" granting summary judgment in favor of San.

> After filing the Petition for Invalidity, a criminal action was initiated in Cambodia in the Court of First Instance which resulted in very specific findings against Rotana Ek: that Rotana Ek had fraudulently procured a death certificate which falsely pronounced Laline Rim's death and that Laline Rim was still alive in Cambodia and alive at the time of the marriage of Rotana Ek to Layheang San. The Court has reviewed the final judgment of the Cambodian Court and under principles of comity, Res Judicata and/or Collateral Estoppel, adopt[s] the factual findings of the Cambodian Court and concludes that this court is precluded from litigating two factual issues already determined by the Cambodian Court: (1) the death certificate which purported to represent the death of Rotana Ek's first wife (Laline Rim) was fraudulent, and (2) that Laline Rim is still alive.
>
> The Court recognizes that the Cambodian Court was exhaustive in its investigation and findings, was careful in its approach and in reviewing and weighing the evidence. Furthermore, it would be extremely costly to have the parties present Cambodian witnesses to this court at trial. The purpose of summary judgment is to avoid an unnecessary and costly trial.

The superior court's order provided that, if the Cambodian trial court's decision were overturned on appeal, "these findings on summary judgment shall be vacated and this matter shall proceed to trial."

On June 21, 2017, San moved for entry of a final judgment. In response, Ek filed a motion to vacate the superior court's summary judgment order. Ek asserted that he had learned his Cambodian conviction was scheduled to be overturned on July 28, 2017. Ek claimed he had presented evidence to the Cambodian appellate court that the "Laline Rim" identified by San's witnesses was actually a different person than his former wife.

On July 25, 2017, the superior court entered a final order invalidating the marriage. The superior court made findings as follows:

> On 1/31/17, the Court held a hearing on a motion for summary judgment where it relied on the Cambodian Court's findings that Rotana Ek's first wife (Laline Rim) did not perish in an accident as Mr. Ek had represented. She was still living at the same address she apparently shared with Mr. Ek in the past.
>
> A person is prohibited from entering into a subsequent marriage when either party has a spouse still living at the time of the subsequent marriage. See RCW 26.04.020[.] This is also prohibited under the Bigamy statute (RCW 9A.64.010)[.] Therefore the marriage between Layheang San and Rotan Ek is invalid.

The superior court found that Ek's fraud constituted intransigence and awarded attorney fees and costs to San on that basis.

On September 20, 2017, Ek moved to vacate the order invalidating the marriage.[3] Ek attached a two-page order entitled "Criminal Judgment Extract." According to the document, dated September 7, 2017, the Cambodian appellate court had vacated Ek's sentence on appeal. But in contrast to the judgment and sentence imposed by the Cambodian trial court, the Cambodian appellate court's order made no findings and provided no basis for the decision.

San argued that the Cambodian appellate court's decision should not be afforded comity because Ek obtained it through bribery. In support of this claim,

---

[3] Ek's motion to vacate does not identify the legal basis upon which it relies. But we need not address this deficiency because the trial court previously ordered that the summary judgment order "shall be vacated" if the Cambodian trial court's decision were overturned on appeal. Ek presumably relies on CR 60(b)(6), which permits relief from a judgment when "a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application," or CR 60(b)(3), which provides relief based on newly discovered evidence.

4

(

San provided the declaration of her sister, Chou San.[4] Chou stated that, shortly after the Cambodian appellate court issued its decision, she was contacted by telephone by Sie Tong, a government official with the Cambodian Ministry of Justice. A few days later, Tong called Chou a second time. Tong told Chou that Ek paid a bribe and used a network of family connections to influence the Cambodian appellate court to vacate his conviction. Tong informed Chou that the court would reinstate Ek's conviction if she paid a bribe of $50,000. Believing that something like this might happen, Chou secretly recorded the second conversation. Chou attached a transcript of the conversation to her declaration.

On December 11, 2017, the superior court denied Ek's motion to vacate. The superior court noted that it was "astonished to see a conclusory ruling by the appella[te] court that did not analyze any of the facts that were found by the [c]ourt below." The superior court concluded that it could not afford comity to the Cambodian appellate court's decision. Ek appeals.

## DISCUSSION

Ek claims the superior court erred in denying his motion to vacate because it was obligated to afford comity to the Cambodian appellate court's decision. We review a superior court's denial of a motion to vacate for abuse of discretion. Haley v. Highland, 142 Wn.2d 135, 156, 12 P.3d 119 (2000). The superior court's decision will only be disturbed "if there is a clear showing that the exercise of discretion was manifestly unreasonable, based on untenable grounds, or based

---

[4] We refer to Chou San as "Chou" to distinguish her from the respondent. No disrespect is intended.

on untenable reasons." Moreman v. Butcher, 126 Wn.2d 36, 40, 891 P.2d 725 (1995).

The doctrine of comity gives a court discretion to give effect to the law and resulting orders of another jurisdiction. Haberman v. Wash. Pub. Power Supply Sys., 109 Wn.2d 107, 160, 744 P.2d 1032 (1987). Accordingly, we also review a superior court's decision whether or not to exercise comity for abuse of discretion. Pruczinski v. Ashby, 185 Wn.2d 492, 506, 374 P.3d 102 (2016).

A foreign order will generally be accorded comity unless it would be "repugnant to fundamental notions of what is decent and just in the State where enforcement is sought." Rains v. State, Dep't of Soc. & Health Servs., Div. of Child Support, 98 Wn. App. 127, 135, 989 P.2d 558 (1999) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 117 cmt. c. (1971)). The test for granting comity to a foreign order is set out in In re Estate of Toland:

> The foreign court must have had jurisdiction and there must have been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment.

180 Wn.2d 836, 846, 329 P.2d 878 (2014) (citing Hilton v. Guyot, 159 U.S. 113, 202, 16 S.Ct. 139, 40 L.Ed. 95 (1895); Restatement § 98 cmt. c (1971).)

Here, the superior court declined to grant comity to the Cambodian appellate court decision based in part on concerns raised by San that Ek obtained the ruling by bribery. The court considered Chou's declaration and the transcript

6

of the purported conversation with Tong, over Ek's hearsay objection. The superior court also highlighted the marked differences in the documentation provided by Ek with regard to the Cambodian appellate court ruling and that of the Cambodian criminal Court of First Instance.

> First of all, I granted—I treated the Cambodian court system's results from the Court below with comity, which is to say I considered it equivalent to our justice system. Because of the level of detail and all the witnesses who were called, and that the findings were as careful as I would expect from one of—from an American court.
>
> The appellate decision could not be more different. First overall, it simply addresses relieving Mr. Ek of the conviction for obtaining fraudulent—for obtaining a fraudulent death certificate. It does not vacate or even criticize the findings of the Court below. And this is— makes it—this makes it much more difficult to treat this decision as an equivalent to a product of the American justice system.

Ek explained in his briefing that the documentation submitted to the superior court was an "extract of the final judgment" of the Cambodian appellate court as opposed to the full opinion and findings of the Cambodian trial court upon which the earlier superior court ruling was based.

Even if the superior court had granted comity to Cambodian appellate court decision, Ek was not entitled to vacation of the invalidity order. The superior court found that there was no genuine issue of material fact that Rim was still alive. The Cambodian appellate court decision vacated only Ek's criminal convictions for "fraudulent request for documents and forging attestation."[5] It did not vacate the

---

[5] The Cambodian appellate court's decision provides as follows:
To change the decision in criminal case No. 2757 "H", dated October 5, 2016, of Phnom Penh Court of First Instance, at point 1 and point 2, to a decision that EK Ratana, male, 40 years old, Khmer origin, shall be acquitted of the fraudulent request for documents and forging attestation, committed at Boeung Kak 1 quarter, Tuol Kok district, Phnom Penh, in 2009, determined as criminal offense based on Articles 632 and 636 of the Criminal Code.

Cambodian trial court's lengthy and detailed findings that Rim was still alive.[6] The superior court properly granted summary judgment on that issue.

Ek also claims that the superior court erred in considering Chou's declaration because it was unsigned and untimely served. But the copy filed with the court contains Chou's signature page. And Ek waived any objection to the timeliness of Chou's declaration by failing to object or request a continuance below. See Cotton v. City of Elma, 100 Wn. App. 685, 690, 998 P.2d 339 (2000); Podbielancik v. LPP Mortg. Ltd., 191 Wn. App. 662, 667, 362 P.3d 1287 (2015).

Finally, Ek contends that the superior court erred in relying on Tong's inadmissible hearsay statements. At the hearing on the motion to vacate, Ek asked the superior court "to disregard that entire conversation [with Tong] as hearsay and unreliable." Hearsay is a statement offered in evidence to prove the truth of the matter asserted. ER 801(c). The court indicated that it did not consider Tong's statements for the truth of the matter asserted—that Ek had paid a bribe. Instead, the court stated that it considered Tong's contact and suggestion of additional bribes as evidence that the Cambodian courts were susceptible to corruption.

> And she—her decision to tape the phone call was motivated by and earlier conversation where a bribe was discussed. And so the—I accord—it goes to the weight of this evidence that she would even think to record it. And I am not necessarily saying that the phone call

---

By "point 1 and point 2," the Cambodian appellate court refers to the Reasons section of the decision by the Cambodian trial court, explaining the basis for their ruling.

[6] Ek argues that the Cambodian appellate court's decision was "an extract of the court's ultimate decision" and "not the entire opinion of the court." He claims that "it is merely a pronouncement of the court's decision and that additional documentation supporting the decision exists or would be forthcoming." Ek's assertion is unsupported by any evidence in the record.

establishes that a bribe was obtained—was—a bribe caused the Court of Appeals there to rule as it did. But it really just—it goes more to the nature of the system where bribery and the use of what they call the network could be used to obtain a favorable result.

However, the conversation between Chou and Tong would only be relevant to establish susceptibility of the Cambodian court system to corruption if true. "One of the reasons for the exclusion of hearsay evidence is because there is no way to cross-examine the witness." State v. Stenson, 132 Wn.2d 668, 711, 940 P.2d 1239 (1997) (citing State v. Chapin, 118 Wn.2d 681, 685, 826 P.2d 194 (1992)). Here, there was no opportunity for Ek to cross-examine the declarant Tong or otherwise determine the source of the information contained in the declaration or credibility of the declarant. The superior court erred in admitting the hearsay statements in the purported transcript of recorded conversation with Tong and those contained in Chou's declaration, but this error was harmless. "An evidentiary error which is not of constitutional magnitude, such as an erroneous admission of ER 404(b) evidence, requires reversal only if the error, within reasonable probability, materially affected the outcome." Id. at 709 (citing State v. Halstein, 122 Wn.2d 109, 127, 857 P.2d 270 (1993)). An error does not materially affect the outcome of a case and is harmless where "the evidence is of minor significance compared to the overall evidence as a whole." State v. Everybodytalksabout, 145 Wn.2d 456, 469, 39, P.3d 294 (2002).

The ultimate finding that Rim was still alive, and was alive at the time of Ek and San's marriage, remained undisturbed by any subsequent ruling by the Cambodian appellate court. There is no evidence in the record to suggest that the Cambodian appellate court even considered that question in its reversal of Ek's

criminal conviction. The superior court did not abuse its discretion in denying Ek's motion to vacate the invalidity order regarding his marriage to San.

San asserts that she is entitled to attorney fees on appeal as she is the prevailing party and due to Ek's intransigence below. However, RAP 18.1 "requires more than a bald request for attorney fees on appeal . . . [a]rgument and citation to authority are required under the rule to advise the court of the appropriate grounds for an award of attorney fees and costs." Stiles v. Kearney, 168 Wn. App. 250, 267, 277, P.3d 9 (2012) (citing Thweatt v. Hommel, 67 Wn. App. 135, 148, 834 P.2d 1058 (1992); Austin v. U.S. Bank of Wash., 73 Wn. App. 293, 313, 869 P.2d 404 (1994)). Because San's request is insufficient to meet the requirements of RAP 18.1, we deny the request for fees.

Affirmed.

WE CONCUR: